E-FILED
Tuesday, 25 September, 2007  10:01:54 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | CIVIL ACTION NO.: |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | |
| THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, the United States of America, by its undersigned attorneys, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

1. In this action, the United States seeks to declare invalid and permanently enjoin the execution or enforcement of a statutory provision enacted by the State of Illinois that is preempted by the Supremacy Clause of the United States Constitution. On August 13, 2007, Rod R. Blagojevich, in his official capacity as Governor of the State of Illinois, signed into law H.B. 1744, an act amending the Right to Privacy in the Workplace Act, 820 Ill. Comp. Stat. 55/1, *et seq. See* Illinois Public Act 095-0138 ("the Illinois Act"). Plaintiff seeks a declaration that federal law preempts Section 12(a) of the Illinois Act (limiting enrollment in any employment eligibility verification system), on the grounds that it conflicts with federal law and/or that it otherwise presents an obstacle to accomplishment and execution of the full purposes and objectives of federal law. Plaintiff also seeks a permanent injunction precluding the State of Illinois, and its officers, from executing or enforcing this section of the Illinois Act.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1345.

3. Venue lies in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is the United States of America, suing on its own behalf.

5. Defendant, the State of Illinois is a State of the United States that entered the Union as the 21st State in 1818.

## STATEMENT OF THE CLAIM

I.   The Need for Effective Enforcement of Employment Restrictions

6. The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, and related regulations govern the circumstances in which non-U.S. citizens may be employed within the United States. It is a violation of federal law for employers to knowingly employ an alien who is not authorized to work in the United States ("unauthorized aliens"). *See* 8 U.S.C. § 1324a.

7. Despite these prohibitions, the employment of unauthorized aliens by U.S. employers remains a substantial problem and is attributable, among other things, to employers who violate federal law by knowingly employing unauthorized aliens and to unauthorized aliens who present fraudulent documents indicating they are authorized to work in the United States.

8. Effective enforcement of the prohibitions on the employment of unauthorized aliens is a necessary aspect of any effort to restrict the entry of undocumented aliens into the United States. The desire to obtain employment in the United States, regardless of legal immigration status, is one of the primary reasons aliens choose to enter this country illegally. As long as such individuals can successfully circumvent the INA's employment prohibitions and obtain employment, such as through the use of fraudulent documents, the motivation to enter the United

States illegally will remain.

## II. Federal Employment Eligibility Verification Programs

9. U.S. employers generally are required to verify the employment eligibility of all newly hired employees by examining documentation presented by the employee and completing an I-9 Form. 8 U.S.C. § 1324a; 8 C.F.R. Part 274a.

10. Because of the central importance of enforcing the INA's employment restrictions in relation to broader efforts by the U.S. Government to address the problem of illegal immigration, and because of increased use of fraudulent documents by persons seeking to circumvent the Form I-9 process, in recent years Congress has sought to provide U.S. employers with a more effective, efficient, and reliable means of verifying whether an alien is legally authorized to work in the United States.

11. In 1996, Congress authorized the creation of three pilot programs to permit an employer to confirm a new hire's employment eligibility with more accuracy, initially through a toll-free telephone line or other toll-free electronic media. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") §§ 401-405, Pub. L. 104-208, Div. C, Title IV, Subtitle A, 110 Stat. 3009-655 through 3009-666, codified as a note to 8 U.S.C. § 1324a. The first such program was referred to as the "Basic Pilot Program." *See* IIRIRA § 403(a). The two other programs—the Citizen Attestation Pilot Program, *see* IIRIRA § 403(b), and the Machine-Readable-Document Pilot Program, *see* IIRIRA § 403(c)—followed the same procedures of the Basic Pilot Program with certain variations and exceptions. Of these three, only the Basic Pilot Program (now referred to as "E-Verify") remains in operation, and only the Basic Pilot Program is at issue in this lawsuit.

12. The Basic Pilot Program outlines procedures whereby participating employers submit

to the U.S. Government certain information pertaining to newly-hired employees to confirm their identity and employment eligibility. Those employers then receive a response from the verification system as to whether the individual is authorized to work in the United States and whether he or she has presented a valid Social Security Number that matches his or her name and date of birth in SSA records.

13. Congress provided that employers may elect to participate in the Basic Pilot Program, except for specified entities of the U.S. Government and certain entities subject to an order under INA sections 274A(e)(4) and 274B(g) whose participation was made mandatory. *See* IIRIRA §§ 402(a), (e).

14. Congress originally required that the Basic Pilot Program be available, at a minimum, in five of the seven states with the highest estimated population of illegal aliens, *see* IIRIRA § 401(c)(1), and Congress provided that the Basic Pilot Program would terminate four years after implementation. *See* IIRIRA § 401(b).

15. On September 15, 1997, the former Immigration and Naturalization Service ("INS") published in the Federal Register guidelines under which employers could elect to participate in one of the three pilot programs authorized by IIRIRA. *See* Pilot Programs for Employment Eligibility Confirmation, 62 Fed. Reg. 48,309 (Sept. 15, 1997). The guidelines set forth an automated system in which information provided in a newly hired employee's Form I-9 (Employment Eligibility Verification) would be checked by pilot program participants against databases maintained both by the Social Security Administration ("SSA") and the INS.

16. The guidelines further identified Illinois as being one of the five states with the highest estimated populations of illegal aliens, and, therefore, solicited employers in Illinois to participate in the Basic Pilot Program.

17. In 2001, Congress extended its authorization of the Basic Pilot Program to six years from the date of its initial implementation. *See* Basic Pilot Extension Act of 2001, Pub. L. 107-128, 115 Stat. 2407.

18. In 2003, based in part on a desire to further evaluate the efficacy of the Basic Pilot Program, Congress again amended its initial authorization by extending the Program's termination date to eleven years following initial implementation of the program. In addition, Congress sought to encourage wider use of the Basic Pilot Program by mandating the expansion of the Program to all fifty states as of December 1, 2004. *See* Basic Pilot Program Extension and Expansion Act of 2003, Pub. L. 108-156, 117 Stat. 1944-46.

19. On December 20, 2004, U.S. Citizenship and Immigration Services ("USCIS"), as the successor to the INS, published a notice in the Federal Register announcing the expansion of the Basic Pilot Program to all fifty states, and the introduction of an internet-based verification process. *See* Expansion of the Basic Pilot Program to All 50 States and the District of Columbia; Providing Web-Based Access, 69 Fed. Reg. 75,997 (Dec. 20, 2004).

20. The provisions of IIRIRA permitting employers to elect to participate in the Basic Pilot Program was not altered by the 2001 or 2003 amendments.

### III. Purpose, Objective, and Operation of the Basic Pilot Program

21. One of the principal purposes of the Basic Pilot Program is to ascertain the most effective and efficient means for verifying whether an individual is legally authorized to work in this country, specifically by evaluating whether an automated employment verification system is a useful tool for assisting U.S. employers and the U.S. Government in confirming that unauthorized aliens are not being employed contrary to the prohibitions of the INA.

22. The Basic Pilot Program operates as follows. Once an applicant accepts a job offer,

he or she presents certain documents to the participating employer and completes part of the Form I-9. The employer, within three days of the hire, examines the documents to determine whether they reasonably appear on their face to be genuine and, if so, completes the employer-portion of the Form I-9 attesting to this examination. The employer must also submit required information to the Basic Pilot system within three days of hire. The Basic Pilot system compares the information submitted by the employer against the SSA's records and, if necessary, compares the information against DHS' records.

23. Although the statute allows three days, in practice the employer is generally notified within seconds where the Basic Pilot system electronically ascertains that the new hire is authorized to work (which occurs with approximately 92% of all queries), or by the close of the next business day where a manual check is necessary to verify noncitizen status (which occurs in approximately 1% of queries). If the Basic Pilot system cannot confirm the work eligibility of the new hire, it issues a "tentative nonconfirmation" notice. *See* IIRIRA § 404(b).

24. If the new hire does not contest the tentative nonconfirmation ("TNC"), that is considered a final nonconfirmation. If the new hire does wish to contest the TNC, the employee is given instructions on how to pursue a secondary verification and has eight working days to contact the SSA or DHS to seek to resolve the TNC. Congress' authorization of the Basic Pilot Program specifically prohibits an employer from taking an adverse employment action against a new hire based upon a pending TNC, unless and until it is resolved with a final nonconfirmation. *See* IIRIRA § 403(a)(4)(B)(iii).

25. Once the secondary verification process is completed, the Basic Pilot system issues a final confirmation or final nonconfirmation of employment eligibility. *See id.* § 404(c). Upon a final nonconfirmation determination, an employer has two options: (i) it can dismiss the new hire

as not authorized to work in the United States; or (ii) it can continue to employ the new hire. If the employer continues to employ the new hire, it must notify DHS of its decision. If DHS subsequently brings an enforcement action against the employer, the employer faces a rebuttable presumption that the employer knowingly hired an unauthorized alien employee in violation of the INA.

26. The effectiveness of the Basic Pilot Program, and Plaintiff's ability to meaningfully evaluate the Program's continued efficacy, depends on its use. Federal law currently encourages but does not require, employers to participate in the Basic Pilot Program.

27. When Congress initially created the Basic Pilot Program, it made clear its intention to focus the Program on states with the largest expected populations of unauthorized aliens. In selecting Illinois as one of the first five states in which to implement the Basic Pilot Program, the former INS determined that participation in the Basic Pilot Program by Illinois employers would best advance Congress' purpose in establishing the Program.

28. Congress has indicated its intent to encourage continued growth in the Program by twice extending the Program's operation beyond its planned termination date. Congress also made clear its objective and purpose to encourage broad participation in the Basic Pilot Program by instructing DHS to expand the Program to all fifty states.

29. Use of the Basic Pilot Program has steadily grown throughout its time in operation. As of August 31, 2007, 22,205 employers had agreed to participate in the Basic Pilot Program, and 2.9 million queries have been made this fiscal year. Currently, approximately 800 employers join each week.

30. Because the effectiveness of the Basic Pilot Program depends on the ability of employers to participate, any obstacle to employers' continued participation or any limitation on

new enrollments in the Basic Pilot Program impedes the ability of the U.S. Government to fully evaluate the program's utility in enforcing the INA's employment eligibility requirements.

31. Restrictions on new and continuing participation also impede the ability of the U.S. Government to evaluate and refine the design and implementation of the Program. In order for the U.S. Government to accurately evaluate the Basic Pilot Program's efficacy and design, the Program must have participation from a wide range of employers in all parts of the United States. Any limitation on current or new participation in the Basic Pilot Program will hinder this process.

### IV. The Illinois Act & Conflicts with Federal law

32. The Illinois Act will become effective on January 1, 2008.

33. The Illinois Act amends the Illinois' Right to Privacy in the Workplace Act, codified as 820 Ill. Comp. Stat. 55/1, *et seq.*, by adding, in part, the following language:

> *Employers are prohibited from enrolling in any Employment Eligibility Verification System, including the Basic Pilot Program*, as authorized by 8 U.S.C. 1324a, Notes, Pilot Programs for Enforcement Eligibility Confirmation (enacted by PL 104-208, div. C, title IV, subtitle A), until the Social Security Administration (SSA) and Department of Homeland Security (DHS) databases are able to make a determination on 99% of the tentative nonconfirmation notices issued to employers within 3 days, unless otherwise required by federal law.

Illinois Pub. L. 095-0138, § 12(a) (emphasis added).

34. Federal law requires only that the Basic Pilot system shall provide confirmation or a tentative nonconfirmation of an individual's identity and employment eligibility within 3 working days of the initial inquiry. *See* IIRIRA § 404(b). Where the validity of a tentative nonconfirmation notice is challenged federal law provides for a secondary verification process designed to "confirm the validity of information provided and to provide a final confirmation or nonconfirmation within 10 working days after the date of the tentative nonconfirmation." *See*

IIRIRA § 404(c).

35. The Illinois Act therefore imposes conditions on enrollment in the Basic Pilot Program by Illinois employers that are not required by Congress. Further, with the Illinois Act, the State of Illinois is attempting to indirectly regulate the U.S. Government by imposing state standards on a federal program that must be satisfied before Illinois employers are permitted to enroll.

36. Because the U.S. Government does not issue final determinations on 99% of the tentative nonconfirmation notices issued to employers within three days, as required by the Illinois Act, enforcement of the Illinois Act would effectively preclude employers in Illinois from enrolling in the Basic Pilot Program.

37. Enforcement of the Illinois Act therefore conflicts with the express intent of Congress that the Basic Pilot Program be made available to employers in all fifty states. Enforcement of the Illinois Act would also conflict with Congress' express intent that the Basic Pilot Program be operated in five states with the highest estimated population of illegal aliens insofar as Illinois is estimated to have the fourth highest population of illegal aliens in the United States.

38. As of August 20, 2007, approximately 750 Illinois employers are participating in, or have agreed to participate in, the Basic Pilot Program.

39. On information and belief, Plaintiff understands that officials at the Illinois Department of Labor ("IDOL") have advised that it interprets the Illinois Act as prohibiting employers currently enrolled in the Basic Pilot Program from continuing to participate as of the Act's effective date of January 1, 2008.

40. Plaintiff has received inquiries from Illinois entities concerning the ability of

employers in the state to continue participating in the Basic Pilot Program, which shows that the enactment of the Illinois Act may interfere with current employers' willingness to continue to participate in the program.

   41.  Enforcement of the Illinois Act may result in previously-enrolled Illinois employers ceasing participation in the program, upsetting the U.S. Government's expectations regarding employer participation in Illinois and frustrating the purpose and utility of the Basic Pilot Program.

   42.  Enforcement of the Illinois Act may also cause in those employers with operations in multiple states, including Illinois, to decline to participate or to cease participation in the Basic Pilot Program at all of their worksites in an effort to avoid violating the Illinois Act, thereby further harming the purpose and efficacy of the Basic Pilot Program.

   43.  By prohibiting Illinois employers from participating in the Basic Pilot Program, the Illinois Act creates a substantial obstacle to the U.S. Government's ability to evaluate the Program and clearly impedes access of Illinois employers to the Basic Pilot Program.  The Illinois Act also conflicts with the congressional mandate that employers in all fifty states (and in particular those employers in those states, such as Illinois, with the highest numbers of illegal aliens) have the ability to participate in the Basic Pilot Program.  The Illinois Act thus conflicts with and otherwise stands as an obstacle to the full purposes and objectives of Congress in creating and expanding the Basic Pilot Program.

### COUNT ONE – VIOLATION OF, AND PREEMPTION UNDER, THE SUPREMACY CLAUSE AND FEDERAL LAW

   44.  Plaintiff repeats and incorporates by reference the allegations of paragraph 1 through 43 of the Complaint as if fully stated herein.

   45.  The Supremacy Clause of the United States Constitution provides that "the Laws of

the United States . . . shall be the supreme law of the Land; and . . . every state shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2.

46. Congress authorized the creation of the Basic Pilot Program, an automated system in which employers can verify whether a newly-hired employee is authorized to work in the United States. Congress originally required the program be made available to employers in five states, and subsequently required the program be made available to employers in all fifty states. In so doing, Congress guaranteed access under federal law to the Basic Pilot Program to all employers in the United States.

47. The State of Illinois, through its elected representatives, enacted into law a statute that precludes employers from enrolling in the Basic Pilot Program until SSA and DHS are able to make a determination on 99% of the tentative nonconfirmation notices issued to employers within three days. In so doing, the Illinois Act sets preconditions on participation by Illinois employers in the Basic Pilot Program that are not required under federal law. It also imposes standards with which the U.S. Government must comply before Illinois employers may participate in the program.

48. The Illinois Act precludes Illinois employers from enrolling in the Basic Pilot Program because the U.S. Government does not make final determinations on 99% of the tentative nonconfirmation notices issued under the Basic Pilot Program within three days. By imposing standards that a U.S. Government program must satisfy before employers in the state may participate in the program, the Illinois Act impermissibly seeks to regulate a U.S. Government program. The Illinois Act is thus preempted under the Supremacy Clause of the U.S. Constitution.

49. The Illinois Act restricts Illinois employers' participation in the Basic Pilot Program, and thus conflicts with the congressional mandate that the Basic Pilot Program be available, and that participation be encouraged, not only for all employers in all fifty states, but also for those employers operating in the states with the five highest populations of illegal aliens, such as Illinois. The Illinois Act is thus preempted under the Supremacy Clause of the U.S. Constitution.

50. By restricting the ability of Illinois employers to participate in the Basic Pilot Program, the Illinois Act frustrates Plaintiff's ability to effectively evaluate the efficacy and design of the Basic Pilot Program on a national basis. The Illinois Act thus presents an obstacle to accomplishment and execution of the full purposes and objectives of Congress in creating the Basic Pilot Program and frustrates the intent of Congress. The Illinois Act is therefore preempted under the Supremacy Clause of the U.S. Constitution.

51. Defendant's action has caused and will continue to cause substantial harm to the United States for which Plaintiff has no adequate remedy except by this action.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays for the following relief:

1. A declaration pursuant to 28 U.S.C. § 2201 stating that Section 12(a) of Illinois Pub. L. 095-0138 is preempted by federal law, and, accordingly, is invalid, null, and void;

2. A permanent injunction against the State of Illinois, and its officers, agents, and employees, prohibiting the enforcement of Section 12(a) of Illinois Pub. L. 095-0138;

3. That this Court grant plaintiff such other and further relief as may be just and proper, including any necessary and appropriate injunctive relief.

Dated: September 24, 2007                                          Respectfully submitted,

                                                                          PETER D. KEISLER
                                                                          Assistant Attorney General

RODGER A. HEATON
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch

　　*/s/ Alexander K. Haas*
ALEXANDER K. HAAS (CA Bar# 220932)
Attorney for Plaintiff
Trial Attorney, Federal Programs Branch
United States Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel: (202) 307-3937—Fax: (202) 616-8470
alexander.haas@usdoj.gov

E-FILED
Tuesday, 25 September, 2007 10:02:36 AM
Clerk, U.S. District Court, ILCD

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
State of Illinois

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Sangamon
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Alexander K. Haas, Trial Attorney, U.S. Dep't of Justice, Civil Division
P.O. Box 883 Washington, D.C. 20044

Attorneys (If Known)
Lisa Madigan, Attorney General, 500 South Second Street
Springfield, IL 62706

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☒ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Supremacy Clause of the U.S. Constitution (Art. VI) and other federal laws

Brief description of cause:
Declaratory or injunctive relief that federal law preempts Illinois Public Law 095-0138

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 09/24/2007

SIGNATURE OF ATTORNEY OF RECORD
*Alexander K. Haas* (signature)

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____