IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 07-3261 |
| | ) | |
| THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff claims that §12(a) of the Right to Privacy in the Workplace Act (820 ILCS 55/12(a)) is preempted by federal law.  That section prohibits employers in Illinois from enrolling in the Basic Pilot, or E-Verify program until the federal databases are able to make an accurate determination of 99% of tentative nonconfirmations within three days. The section is inapplicable to the extent enrollment is mandated by federal law.

Plaintiff's preemption argument begins from a false premise.  Plaintiff contends that the purpose of the federal enactment was to benefit employers by providing them with a tool for electronic verification of employment statutes, and plaintiff claims that this purpose is frustrated by the state enactment.  In fact, the purpose of the federal program is to establish and test an electronic system to determine its effectiveness in accomplishing Congress' ultimate purpose, stopping the employment of immigrants who are ineligible for such employment.  Because plaintiff has offered no evidence that §12(a) frustrates this purpose, summary judgment should be denied.

Congress has enacted a voluntary program in which any and Illinois employers may decline to participate. Congress also has given the U.S. Attorney General the authority to deny participation in the program to any States in which the Attorney General declines to expend federal resources. There is no evidence that Congress intended to preempt a State from opting its employers out of the program.

## II. RESPONSE TO UNDISPUTED MATERIAL FACTS

### A.    UNDISPUTED MATERIAL FACTS

1.    Paragraph 1 is a statement of law, not fact, but defendant admits the matters cited.

2.    Paragraph 2 is a statement of law, not fact, but defendant admits the matters cited.

3.    Paragraph 3 is a statement of law, not fact, but defendant admits the matters cited.

4.    Paragraph 4 is a statement of law, not fact, but defendant admits the matters cited.

5.    Paragraph 5 is a statement of law, not fact, but defendant admits the matters cited.

6.    Paragraph 6 is a statement of law, not fact, but defendant admits the matters cited.

7.    Paragraph 7 is a statement of law, not fact, but defendant admits the matters cited, except that defendant denies that the publication in the Federal Reporter was a solicitation for employers to participate in the program.

8.    Paragraph 8 is a statement of law, not fact, but defendant admits the matters cited.

9.    Paragraph 9 is a statement of law, not fact, but defendant admits the matters cited.

10.    Paragraph 10 is a statement of law, not fact, but defendant admits the matters cited.

12.    Paragraph 12 is a statement of law, not fact, but defendant admits the matters cited.

13.    Defendant admits the matters cited in paragraph 13.

14.    Defendant admits the matters cited in paragraph 14.

17.    Paragraph 17 is a statement of law, not fact, but defendant admits this is a correct statement of the law.

18.    Paragraph 18 is a statement of law, not fact, but defendant admits the matters cited.

19.    Paragraph 19 is a statement of law, not fact, but defendant admits the matters cited.

20.    Paragraph 20 is a statement of law, not fact, but defendant admits the matters cited.

21.    Defendant admits the matters cited in paragraph 21.

22.     Defendant admits the matters cited in paragraph 22.

**B.     DISPUTED FACTS**

11.     Defendant disputes the assertion that Congress extended the program through Fiscal Year 2009.  Congress has only extended the program until March 6, 2009.

**C.     IMMATERIAL FACTS**

15.     Plaintiff takes the position that the actual functioning of the program is immaterial.  Brief at 10, n.5.  To the extent that the court finds this fact material, defendant objects to inclusion of this fact, as the summary judgment motion was filed before the meeting of the parties, initial disclosures, and an opportunity for discovery on this question. The cited fact is also not material because it does not establish that DHS is complying with federal law, which requires final confirmation within 10 days of the initial tentative nonconfirmation.

16.     Plaintiff takes the position that the actual functioning of the program is immaterial.  Brief at 10, n.5.  To the extent that the court finds this fact material, defendant objects to inclusion of this fact, as the summary judgment motion was filed before the meeting of the parties, initial disclosures, and an opportunity for discovery on this question.  The statement consists of a summary of calculation of data that was not provided to defendant as required by Rule 1006 of the Federal Rules of Evidence.

**D.     ADDITIONAL STATEMENTS OF MATERIAL FACT**

1.     According to SSA and to DHS, workers often receive tentative nonconfirmations because information such as name changes and updates to employee citizenship status (such as a Legal Permanent Resident who has recently naturalized) has

4

not been updated in the SSA database. *See Employment Verification: Challenges Exist in Implementing a Mandatory Electronic Employment Verification System*: Hearing Before the Subcomm. On Social Security of the House Committee on Ways and Means, at 4 (Testimony of Richard Stana, Director of Homeland Security & Justice Issues for the U.S. Government Accountability Office, May 6, 2008) available at http://waysandmeans.house.gov/media/pdf/110/gao5608.pdf.

2.    A recent study commissioned by the DHS concluded that work-authorized foreign-born employees (naturalized citizens and work-authorized immigrants) erroneously received tentative nonconfirmations at a rate approximately 30 times higher than U.S.-born employees. Westat*, Findings of the Web Basic Pilot Evaluation*, at 97, *available at* http://www.uscis.gov/files/article/WebBasicPilorRprtSept2007.pdf.

3.    This same study found that a significant number of employers that use Basic Pilot restrict work assignments, delay training, or reduce worker pay while they await the resolution of a tentative nonconfirmation, all in violation of the federal Basic Pilot statute. *Id.* at 77. Westat*, Findings of the Web Basic Pilot Evaluation*, at 97, *available at* http://www.uscis.gov/files/article/WebBasicPilotRprtSept2007.pdf.

## III.  ARGUMENT

### A.    BACKGROUND ON THE BASIC PILOT PROGRAM

#### 1.    The Basic Pilot Program and Its Current Status

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which, among other things, authorized the creation of three pilot programs for verifying employment eligibility, including the Basic Pilot Program.

IIRIRA §401(a) & (c).  As IIRIRA makes clear, with limited exceptions not relevant here, employer participation in these pilot programs is voluntary:

> Voluntary election....[A]ny person or entity that conducts any hiring (or recruitment or referral) in a State in which a pilot program is operating may elect to participate in that pilot program....[T]he Secretary of Homeland Security may not require any person or other entity to participate in a pilot program.

IIRIRA §402(a) (titled "Voluntary election to participate in a pilot program").

Congress initially authorized Basic Pilot as a four-year test program.  IIRIRA §404(b).  In 2001, Congress extended it to six years from its date of implementation.  Basic Pilot Extension Act of 2001, Pub. L. 107-128, 115 State. 2407.  In 2003, Congress extended the test program to eleven years from its date of implementation, Basic Pilot Extension and Expansion Act of 2003, Pub. L. 108-156, 117 Stat. 1944-46, leaving the Basic Pilot Program to expire in November 2008.  On July 31, 2008, the U.S. House of Representatives passed H.R. 6633, which would have extended the testing of Basic Pilot for an additional seven years.  The U.S. Senate, however, failed to pass H.R. 6633.  Instead, Congress passed, and the President signed, a continuing resolution (H.R. 2638) that extended Basic Pilot only through March 6, 2009.

In 2007, the Department of Homeland Security "rebranded" Basic Pilot as "E-Verify."  E-Verify remains, however, a voluntary pilot program.

## 2.  Tentative Nonconfirmations

As relevant to this case, the Basic Pilot Program functions as follows: An employer who signs up for Basic Pilot agrees to use the program to confirm the work authorization of new hires within three working days after the hiring date.  IIRIRA §403(a)(3).  If Basic

Pilot cannot confirm that the employee is authorized to work, the program issues the employer a "tentative nonconfirmation," and the employer is required "to inform the individual for whom the confirmation is sought" of this result so that the employee can seek to rectify the problem with either the Social Security Administration (SSA) or the Department of Homeland Security (DHS), the so-called "secondary verification process." IIRIRA §403(a)(4).

As part of this secondary process, SSA and DHS are required "to provide a final confirmation or nonconfirmation within 10 working days after the date of the tentative nonconfirmation." IIRIRA §404(c). In addition, IIRIRA states that SSA and DHS "shall update their information in a manner that promotes the maximum accuracy and shall provide a process for the prompt correction of erroneous information, including instances in which it is brought to their attention in the secondary verification process." IIRIRA §404(g).

If an employee wishes to contest a tentative nonconfirmation, it "will remain tentative until a final confirmation or nonconfirmation is provided by the confirmation system within the [ten-day] time period specified in [IIRIRA §404(c)]." IIRIRA §403(a)(4)(B[1]). If an

---

[1] The United States attaches a declaration to its motion stating that "[a]n employee choosing to contest the [tentative nonconfirmation] has eight business days to contact the SSA or DHS to resolve the [tentative nonconfirmation]. Generally, results of this secondary verification are provided to the employer within ten business days of the date in which the employee was referred to the government for secondary verification." Ratliff Decl. ¶5. This declaration implies, contrary to the plain language of the statute, that the federal government is only required to resolve tentative nonconfirmations within ten business days of the date an employee is referred for secondary verification, rather than the required "ten working days after the date of the tentative nonconfirmation." IIRIRA §404(c).

individual who receives a tentative nonconfirmation fails to resolve the problem, the employer must terminate that individual's employment.  IIRIRA §403(a)(4)(C).

### 3.  Flaws in the Basic Pilot Program

Flaws in the program regularly impose burdens on U.S. citizens and work-authorized immigrants.  According to SSA and DHS, workers often receive tentative nonconfirmations because information such as name changes and updates to employee citizenship status (in the case of a Legal Permanent Resident who has recently naturalized, for example) has not been updated in the SSA database.  *See Employment Verification: Challenges Exist in Implementing a Mandatory Electronic Employment Verification System*: Hearing Before the Subcomm. On Social Security of the House Committee on Ways and Means, at 4 (Testimony of Richard Stana, Director of Homeland Security & Justice Issues for the U.S. Government Accountability Office, May 6, 2008) *available at* http://waysandmeans.house.gov/media/pdf/110/gao5608.pdf.    A recent study commissioned by DHS concluded that work-authorized foreign-born employees (naturalized citizens and work-authorized immigrants) erroneously received tentative nonconfirmations at a rate approximately 30 times higher than U.S.-born employees. Westat, *Findings of the Web Basic Pilot Evaluation*, at 97, *available at* http://www.uscis.gov/files/article/WebBasicPilotRprtSept2007.pdf. This same study found that a significant number of employers that use Basic Pilot restrict work assignments, delay training, or reduce the pay of workers while they await the resolution of a tentative nonconfirmation (all in violation of the federal IIRIRA § 403(a)(4)(B)(iii)).  *Id.* at 77.

**4. Illinois Law**

In response to these and other problems with the Basic Pilot program, on August 13, 2007, the Illinois General Assembly passed, and the Governor signed into law, two worker-protection bills affecting the use of Basic Pilot by Illinois employers. House Bill 1743 amended the Illinois Human Rights Act to make discriminatory employer misuse of Basic Pilot a civil rights violation. *See* Public Act 95-0137, codified at 775 ILCS 5/2-102(G)(2). House Bill 1744 amended the Right to Privacy in the Workplace Act to add employee privacy protections against employer misuse of Basic Pilot, to require employers to post required notices and properly train human resources employees who use Basic Pilot, and to add the provision challenged in this suit. *See* Public Act 95-0138, codified as 820 ILCS 55/12. The challenged provision states:

> Employers are prohibited from enrolling in any Employment Eligibility Verification System, including the Basic Pilot program...until the Social Security Administration (SSA) and Department of Homeland Security (DHS) databases are able to make a determination on 99% of the tentative nonconfirmation notices issued to employers within 3 days, unless otherwise required by federal law.

820 ILCS 55/12(a)(hereinafter "§12(a)"). With the exception of §12(a) which has not been enforced, all of House Bill 1743 and House Bill #1744 took effect on January 1, 2008.

On September 25, 2007, the United States filed this suit seeking a declaration that §12(a) is preempted by federal law and a permanent injunction precluding the State of Illinois from enforcing §12(a). On November 16, 2007, the United States filed a motion for summary judgment and on December 16, 2008, filed a revised motion.

**B.    STANDARD FOR PREEMPTION**

Plaintiff claims that §12(a) is preempted by federal law. Preemption is a question of congressional intent. *Fidelity Federal Savings & Loan Ass'n v. Cuesta*, 458 U.S. 141,

152 (1982).  Preemption can be based upon the express command of Congress or implied from the statute passed by Congress.  *Id.* at 152-53.  The IIRIRA does not expressly preempt §12(a), so plaintiff argues that such an intent is implied.

Implied preemption arises either when Congress has occupied a field of law so comprehensively that courts infer that Congress did not intend any state law on the subject to coexist with the federal scheme, or when state law actually conflicts with federal law. *Fidelity*, 458 U.S. at 153.  Here, plaintiff bases its claim of preemption solely upon the latter, implied conflict preemption theory, which requires plaintiff to show that compliance with both federal and state regulation is an impossibility or that state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  *Frank Brothers, Inc. v. Wisconsin Dept. of Trans.*, 409 F.3d 880, 894 (7th Cir. 2005) (internal quotation marks omitted).

Plaintiff does not claim that it would be impossible to comply with both federal and Illinois law.  Nor could plaintiff make this claim, because, by the express terms of §12(a), the provision does not apply when enrollment is required by federal law.  Thus, §12(a) is preempted only if it stands as an obstacle to the full purposes of Congress, that is, if, because of state law, "achievement of the congressional objective is frustrated."  *Frank Bros.*, 409 F.3d at 894.  And "frustration" theory, in turn, depends on "a fair understanding of [the] congressional purpose" that the challenged state law supposedly frustrates. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996).  That is, "the mere fact that two statutes differ is not conclusive evidence of preemptive effect."  *Frank Bros.,* 409 F.3d 880 at 894.  Rather, the party seeking to prove that a state law is preempted "must allege facts or cite empirical evidence that would establish that the congressional objective at work ...

would either be frustrated or rendered ineffective."  *Id.*  In all preemption cases, the court must "start with the assumption that the historic police powers of the States [a]re not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic*, 518 U.S. at 485; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Altria Group v. Good*, __ U.S. __, 129 S.Ct. 538, 543 (2008).  This is especially so where  "Congress has legislated ... in a field which the States have traditionally occupied."  *Id.*  (Internal quotation marks omitted).  "[T]he establishment of labor standards falls within the traditional police power of the State."  *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21 (1987).  "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985)*; DeCanas v. Bica*, 424 U.S. 351, 356 (1976); *see also Frank Bros.*, 409 F.3d at 886 ("[T]he establishment of prevailing wage rates and labor standards for indigenous workers is an area of traditional state regulation.").

## C.  CONGRESSIONAL PURPOSE

Accordingly, the first item in the analysis is to determine the purpose behind the federal law.  Plaintiff argues that the purpose of the voluntary federal program was to benefit employers by providing them with access to an automated tool to determine employment eligibility.  Brief at 9-11.  Plaintiff argues that language in IIRIRA stating that employers "may elect to participate" in Basic Pilot vests employers with a federally-conferred right to participate in Basic Pilot that conflicts with §12(a).  Brief at 9-10.  Plaintiff's quotation from IIRIRA §402(a) is out of context however.  In fact, there is no such federal right for employers to use Basic Pilot.  The quoted language appears in a section

11

titled "Voluntary election to participate in a pilot program."[2]  IIRIRA §402(a).  Thus, the manifest purpose of the "may elect to participate" language quoted by the United States is to clarify that employers are not required to participate in Basic Pilot, not, as the United States suggests, that employers have a federally-conferred right to participate.

Plaintiff also relies upon the House Report on the legislation as providing evidence that the purpose of Congress was to create a mandate that enrollment in the program be an option to employees in all 50 states.  The isolated statements cited by plaintiff, in context, merely reflect an explanation that the amendments to the Basic Pilot Program expanded the program from the original 5 to 7 states to make it a nationwide program.  The language of the statute, the fact that it is only temporary, and the reports cited by plaintiff all reflect that the purpose of Congress is to test a system to determine its usefulness in stopping illegal employment.

E-verify is one of three employment eligibility pilot programs enacted because of deficiencies in the Immigration Reform and Control Act.   H.R. Rep 108-304, 2003 WL 22321879 at 3.  Congress required a report to be filed detailing the results of the program. *Id.* at 4.  Problems with the efficient operation of the program were identified. *Id.* At 6.  A need for further improvement of the program was recognized. *Id.* at 7.  When Congress

---

[2] The section reads as follows:

Voluntary election....[A]ny person or other entity that conducts any hiring (or recruitment or referral) in a State in which a pilot program is operating may elect to participate in that pilot program...[T]he Secretary of Homeland Security may not require any person or other entity to participate in a pilot program.

IIRIRA §402(a)(titled "Voluntary election to participate in a pilot program").

extended the program to March 6, 2009, it made no substantive changes to E-verify, which

remains a temporary and voluntary pilot program. P.L. 110-329, 2008 H.R. 2638.

**D.    THE AUTHORITY CITED BY PLAINTIFF IS INAPPOSITE TO THE QUESTION PRESENTED**

Nothing in the authority cited by plaintiff suggests that Congress implicitly intended

to preempt state regulation, in an area traditionally subject to such state regulation, by

creating a voluntary program under which, with minor exceptions,[3] every employer in the

State of Illinois may decline to participate.  None of plaintiff's authority suggests that, when

the decision to participate in a federal program is voluntary, the State cannot, within the

realm of its traditional police powers, make the decision not to participate for its employers.

Plaintiff argues that the Supreme Court's decision in *Fidelity Fed. Sav. & Loan*

*Assoc. v. De La Cuesta*, 458 U.S. 141 (1982), supports its assertion that §12(a) is

preempted because, although "the Basic Pilot Program does not require participation by

Illinois employers," the challenged provision of Illinois law "proscribes and punishes an

option expressly provided for by Congress."  This case is easily distinguishable.

*Fidelity* involved the ability of federal savings and loan associations to include due-

on-sale clauses in their mortgage agreements in the face of California court decisions

holding that such clauses violate the state's statutory prohibition on unreasonable restraints

on alienation.  458 U.S. at 149.[4]  The federal savings and loan associations were creatures

of federal law (the Home Owners' Loan Act of 1933) and regulated by a federal agency

---

[3] To the extent federal law mandates enrollment, §12(a) is inapplicable.

[4] A due-on-sale clause is "a contractual provision that permits the lender to declare the entire balance of a loan immediately due and payable if the property securing the loan is sold or otherwise transferred."  *Fidelity*, 458 U.S. at 145.

13

(the Federal Home Loan Bank Board) that had "promulgated regulations governing the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *Id.* at 144 (internal quotation marks omitted). A federal regulation specifically stated that a federal savings and loan association had the power to include, as a matter of contract between it and the borrower, a due-on-sale clause provision in its loan instrument and, in addition, that "'federal associations shall not be bound by or subject to any conflicting State law which imposes different ... due-on-sale requirements.'" *Id.* at 146-47 (quoting 41 Fed.Reg. 18286, 18287 (1976)). On these facts, the Supreme Court had little difficulty concluding that the California court decisions were expressly preempted by the federal regulation, commenting that "[t]he conflict does not evaporate because the Board's regulation simply permits, but does not compel, federal savings and loans to include due-on-sale clauses in their contracts," because the federal agency wanted federal savings and loans to have "the flexibility to accommodate special situations and circumstances." *Id.* at 154-55.

Plaintiff's reliance on the Supreme Court's brief decision in *Leslie Miller v. Arkansas*, 352 U.S. 187 (1956)(per curiam), is unavailing for similar reasons. In that case, as in *Fidelilty*, the regulated entity was federal — a federal contractor that had been vetted and selected by the United States to conduct work exclusively at a federal facility. *Leslie Miller*, 352 U.S. at 189-90. The Supreme Court rejected Arkansas' attempt to apply its own licensing requirements to the contractor, explaining that the federal government had already applied the requirements set forth in the applicable federal regulations to accomplish "the expressed federal policy of selecting the lowest responsible bidder." *Id.* at 190. And *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007), involved the attempted

14

state regulation of a national bank.  Here, in contrast the State has imposed no restrictions or licensing requirements on federal employees or contractors.  The only entities regulated by section 12(a) are employers in Illinois who are not required to participate in the federal program.

*Gade v. Nat'l Solid Waste Mgmt Ass'n*, 505 U.S. 88 (1992), asked whether OSAA regulations preempted state worker safety regulations.  In view of the fact that Congress allowed States to develop their own system of regulations, which if approved, would supplant the OSHA regulations, the Court concluded that "Congress intended to subject employers to only one set of regulations."  *Id.* at 99.    Here there are no competing regulations at issue, as enrollment in the federal program is voluntary.

In *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028 (7th Cir. 2008), the court found that weight restrictions on an access road to the interstate highway system ran afoul of a statute prohibiting States from denying reasonable access to the system.  There is no statute guaranteeing access to the pilot program and, in contrast to A*ux Sable,* access by Illinois employers is not necessary to accomplish the purpose of the program.

Because the State of Illinois has imposed no restrictions on federal employees or contractors, the cases cited by plaintiff for the proposition that a State may not regulate the federal government are likewise inapposite.  For example, *United States v. Georgia Pub. Serv. Comm'n*, 83 S.Ct. 397 (1963), involved an effort by Georgia to coerce an interstate carrier into breaching a contract with the federal government.  *Augustine v. Dept. of Veterans Affairs*, 429 F.3d 1334 (Fed. Cir. 2005), concerned whether a federal hearing officer erred in finding that an attorney had to be licensed by California to practice before the federal agency in that State.  Similarly, in *Hancock v. Train*, 426 U.S. 167, the Court

held that a state could not require a federal facility to obtain a state-required permit and in *Boomer v. AT&T,* 309 F.3d 404 (7th Cir. 2002), the court held that federal law was controlling on the question of the validity of an arbitration clause in a telecommunications contract.  Unlike the state regulation at issue in the plaintiff's cited cases, § 12(a) concerns only when employers in Illinois may participate in a voluntary program.  There is no regulation of federal authorities.

### E.    STATE LAW DOES NOT FRUSTRATE THE PURPOSE OF CONGRESS

Congress' purpose in creating the Basic Pilot Program was to test a pilot system for electronically verifying the work authorization of employees.  The United States has already tested Basic Pilot in Illinois for over a decade, and over 2,000 Illinois employers are currently enrolled in the program.  The United States has presented no evidence that the enforcement of §12(a) of the Illinois law would frustrate the federal government's testing of Basic Pilot.  As a result, the United States cannot show that the Illinois law stands as an obstacle to any federal requirement, and summary judgment should be denied.

Congress created the Basic Pilot Program in 1996 as one of "3 pilot programs of employment eligibility confirmation."  IIRIRA §401(a).  The test programs were designed to be temporary and to terminate after a defined period of testing.  H.R. Rep. 104-828, at 233 (1996)(stating that the original law "sets up three pilot programs of employment eligibility confirmation which will last four years each").  The statute requires the Secretary of Homeland Security to provide Congress with a variety of reports regarding the pilot programs, including "recommendations on whether or not the pilot programs should be continued or modified."  IIRIRA §405(a)(2).  Although the testing period for Basic Pilot was

subsequently extended on several occasions, *see infra* at 1-2, Congress has never made Basic Pilot permanent.  In fact, the program is currently set to sunset on March 6, 2009.

The United States acknowledges that employers in Illinois have been permitted to participate in the testing of the Basic Pilot Program since 1997, Pl's Mem. At 3, ¶7, and that currently more than 2,000 Illinois employers participate in Basic Pilot, representing over 12,000 separate hiring sites.  McMillan Decl. At ¶4.  The United States has provided neither evidence nor argument as to why the past and current participation of Illinois employers is insufficient to meet Congress' purpose of testing the Basic Pilot Program. The United States has thus failed to meet its burden of proving that the Illinois law stands as an obstacle to the accomplishment of any federal objective.

Further, §12(a) of the Illinois law speaks only of prohibiting Illinois employers "from *enrolling*" in Basic Pilot, it does not seek to regulate employers who are already enrolled in the program.  Although the Illinois Department of Labor (IDOL) has not yet promulgated regulations implementing §12(a), the best construction of the law is that it applies only prospectively.  If IDOL interpreted the Illinois law in this manner, the federal government would be guaranteed a significant group of Illinois employers among whom it could continue to test Basic Pilot.  Because the plaintiff has provided no evidence that such a pool of employers would be insufficient to meet Congress' purpose of testing the Basic Pilot system, the United States has failed to prove any conflict, and summary judgment should be denied.  Contrary to plaintiff's assertion (Brief at 13), Illinois' statute has neither the purpose, nor the effect, of regulating the federal government.  The Illinois Act regulates employers, which are not required to use the voluntary pilot program.  The Act does not

impose restrictions on the federal government in any manner.  Accordingly, the motion for summary judgment should be denied.

## F.  JUSTICIABILITY

As an independent ground for denying the plaintiff's motion for summary judgment, their complaints fail to raise a live, justiciable controversy.  "Federal courts established pursuant to Article III of the Constitution do not render advisory opinions."  *Wisconsin Envtl. Decade, Inc. v. State Bar of Wisconsin*, 747 F.2d 407, 410 (7th Cir. 1984).  The jurisdiction of such courts is limited to live cases and controversies.  *Id.*  "[A plaintiff] cannot go to a federal court for advice on the legality of a proposed cause of action. [The plaintiff] must be a party to an existing legal dispute."  *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276 (7th Cir. 1988).  The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit.  *Wisconsin Envtl.*, 747 F.2d at 410.  Subject matter jurisdiction must be the first question addressed in any litigation and, if there is no justiciable controversy, the court must proceed no further.  *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).  "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt v. United Farm Workers*, 442 U.S. 284, 298 (1979).

Although the analyses for standing and ripeness are not always identical, they are "closely related and in cases...perhaps overlap entirely."  *Sierra Club v. Marita*, 4 F.3d 606, 610 (7th Cir. 1995). Both ask whether a plaintiff has demonstrated the constitutional minimum for justiciability.  *Id.* at 611.  "At the summary judgment stage, the plaintiff must produce evidence in the form of Fed.R.Civ.P. 56(e) affidavits or documents that support the injury allegation."  *Freedom From Religion Found., Inc. v. Bugher*, 249 F.3d 606, 609-

10 (7th Cir. 2001); *Gonzales v. North Township of Lake Cty*, 4 F.3d 1412, 1415 (7th Cir. 1993).

The Seventh Circuit has held that no ripe case or controversy existed in a declaratory injunction action involving the Employment of Strikebreakers Act. *People ex rel Barra v. Archer Daniels Midland*, 704 F.2d 935 (7th Cir. 1983). In that case, an actual labor dispute had erupted and the employer had hired replacement workers. *Id.* at 938. Because the employer denied that its conduct violated the Act and no decision to prosecute had been made, the court held that it was being asked to give a mere advisory opinion, notwithstanding the assertion that the State's Attorney "will" bring charges. *Id.* at 941. The court found that there was no actual controversy between the parties, "only a potential controversy." *Id.* Similarly, no justiciable case or controversy was presented by a challenge to a statute barring flag desecration. *Lawson v. Hill*, 368 F.3d 955 (7th Cir 2004). Although the plaintiff admitted violating the statute, the danger of prosecution was sufficiently remote as to present only a request for an advisory opinion. *Id.*

"The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Babbitt v. United Farmworkers Nat'l Union*, 442 U.S. 289, 297 (1979). "The basic inquiry is whether the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical and abstract." *Id.* at 298. "It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Schmidling v. City of Chicago*, 1 F.3d 494, 498 (7th Cir. 1993), quoting *O'Shea v. Littleton*, 414 U.S. at 494. "The injury or threat must be 'real and immediate' not

20

conjectural or hypothetical.'" *Id.*  In *Schmidling*, the court found that in order to establish standing, the plaintiffs needed to show that they had been threatened with "immediate prosecution."  1 F.3d at 499.

In fact, the Supreme Court has held that the mere existence of the statute in and of itself not does contain sufficient proof of enforcement to create a ripe claim. *See, Bailey v. Patterson,* 369 U.S. 31 (1962). Similarly, the Seventh Circuit in *J.N.S., Inc. v. State of Ind.*, 712 F.2d 303, 305 (1983), found that the general policy of enforcing laws is insufficient to provide plaintiff with a ripe claim.

In the present case, plaintiff brought this action before the effective date of the Act in question.  The State of Illinois has voluntarily not enforced the Act during the pendency of this action.  The federal law that allegedly preempts the challenged provision is set to expire on March 6, 2009.  There is no realistic likelihood that the statute will be enforced between now and March 6, 2009.  Furthermore, there is no evidence that the mere existence of the statute on the books has had the effect of deterring willing employers from participating in the federal program.   In fact, plaintiff has provided an affidavit that states that, as of December 2008, 2075 Illinois employers were enrolled in the program.[5]

Given the number of Illinois employers enrolled in the pilot program and the absence of any other evidence showing that plaintiff has been harmed, the Court should find that there is no present case or controversy to be adjudicated.  Furthermore,  unless Congress reenacts the program before it expires on March 6, 2009, and Illinois begins to enforce

---

[5]   This is over double the number of employers enrolled before the Illinois Act took effect.  Plaintiff supplied an affidavit stating that the November 2, 2007 enrollment was 945 employers.

section 12(a), there is no justiciable case or controversy for the Court to decide. Accordingly, the Court should deny plaintiff's motion for summary judgment at this time.

WHEREFORE, defendant respectfully requests that this honorable Court deny plaintiff's motion for summary judgment.

Respectfully submitted,

THE STATE OF ILLINOIS,

Defendant,

LISA MADIGAN, Attorney General,
State of Illinois,

TERENCE J. CORRIGAN, #06191237          Attorney for Defendant,
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
217/782-5819                            BY: s/Terence J. Corrigan
                                             TERENCE J. CORRIGAN
        Of Counsel.                          Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

THE UNITED STATES OF AMERICA,  )
                               )
      Plaintiff,          )
                               )
      -vs-             )     No. 07-3261
                               )
THE STATE OF ILLINOIS,      )
                               )
      Defendant.      )

**Certificate of Service**

I hereby certify that on January 27, 2009, I presented the foregoing Response to Plaintiff's Motion for Summary Judgment to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

alexander.haas@usdoj.gov

and I hereby certify that on January 27, 2009, I have mailed by United States Postal Service, the document to the following non-registered participant:

                   None

                   /s/Terence J. Corrigan
                  Terence J. Corrigan
                  Assistant Attorney General
                  Attorney for Defendant
                  500 South Second Street
                  Springfield, IL 62706
                  Telephone: 217/782-5819
                  Facsimile: 217/524-5091
                  E-mail: tcorrigan@atg.state.il.us